**Lek Kasavadhana MOTT, Appellee,**

v.

**STATE of Iowa, Appellant.**

No. 86–715.

Supreme Court of Iowa.

June 17, 1987.

Thomas J. Miller, Atty. Gen., Lona Hansen, Asst. Atty. Gen., J. Patrick White, Co. Atty., and Anne Lahey, Asst. Co. Atty., for appellant.

Sally Weyer of Bergan & Weyer, Iowa City, for appellee.

Considered by McGIVERIN, P.J., and LARSON, CARTER, WOLLE and LAVORATO, JJ.

LARSON, Justice.

The State appeals from the district court's granting of postconviction relief to the petitioner, Lek Kasavadhana Mott, based on a claim of ineffective assistance of counsel. We reverse and remand.

Mott, who was a native of Thailand, came to the United States in 1977 and was given permanent residency status the same year. In 1978, while he was a juvenile, he was charged with first-degree robbery. The juvenile court waived its jurisdiction and ordered Mott to be tried as an adult. Following a plea agreement, Mott pled guilty to second-degree burglary, and he was sentenced to a term of incarceration not to exceed ten years. His direct appeal was dismissed in 1979 for want of prosecution. He has now been released from prison.

The United States Immigration and Naturalization Service began a deportation investigation based on the burglary conviction. Mott testified he did not know of the possibility of deportation at the time of his plea. In 1985, a federal judge found Mott deportable but stayed further proceedings until the postconviction proceedings are completed. The parties agree that, absent the burglary conviction, Mott would not be deportable.

The postconviction court held that, while deportation was a "collateral" consequence of Mott's plea, it was so serious that his counsel's failure to advise him on the matter amounted to ineffective assistance of counsel.

█ The general test applied to a claim of ineffective assistance of counsel is "whether under the entire record and totality of the circumstances counsel's performance was within the range of normal competency." *Snethen v. State*, 308 N.W.2d 11, 14 (Iowa 1981). When the claim is grounded on counsel's failure to take some action, the claimant must show that (1) counsel failed to perform an essential duty; and (2) prejudice resulted. *Id.* The claimant must rebut the presumption of counsel's competence, *Henderson v. Scurr*, 313 N.W.2d 522, 524 (Iowa 1981), and establish ineffectiveness by a preponderance of the evidence. *Kellogg v. State*, 288 N.W.2d 561, 563 (Iowa 1980).

█ We first address the question of whether Mott's attorney failed to perform an essential duty under the first prong of the test. This requires a showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Saadiq v. State*, 387 N.W.2d 315, 325 (Iowa 1986) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984)). To show counsel was ineffective in a guilty plea case, the petitioner must show that counsel's advice was not within the normal range of competency demanded of attorneys in criminal cases. *Saadiq*, 387 N.W.2d at 325–26 (citing *Hawkman v. Parratt*, 661 F.2d 1161, 1170 (8th Cir.1981).

█ When the ineffectiveness claim is based on alleged failure to advise a defendant of the consequences of a guilty plea, the rule is that, if the consequences flow "directly" from the plea, the plea may be held invalid. *Saadiq*, 387 N.W.2d at 324–25. If, on the other hand, the fallout from the plea is "collateral," counsel is generally

not held to be ineffective for failing to inform the defendant about it. *Id.* at 326.

It is said that

[t]he distinction between "direct" and "collateral" consequences of a plea, while sometimes shaded in the relevant decisions, turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment.

*State v. Warner*, 229 N.W.2d 776, 782 (Iowa 1975) (quoting *Cuthrell v. Director, Patuxent Institution*, 475 F.2d 1364, 1365–66 (4th Cir.), *cert. denied*, 414 U.S. 1005, 94 S.Ct. 362, 38 L.Ed.2d 241 (1973)).

■ Mott apparently concedes that possible deportation is a collateral consequence. He argues, however, that it is such a serious consequence that we should hold his counsel to a duty to inform him of it. He cites cases which say deportation may result "in loss ... of all that makes life worth living," *Ng Fung Ho v. White*, 259 U.S. 276, 284, 42 S.Ct. 492, 495, 66 L.Ed. 938, 943 (1922), and that it is the equivalent of banishment, *Fong Haw Tan v. Phelan*, 333 U.S. 6, 10, 68 S.Ct. 374, 376, 92 L.Ed. 433, 435 (1948).

The drawing of lines on the basis of direct versus collateral consequences in such cases is not without its detractors. The District of Columbia circuit, for example, has said that, in the deportation context, such a distinction is "extremely troublesome" and that "in many cases their deportation is a more direct and automatic consequence of conviction than any other sanction." *United States v. Russell*, 686 F.2d 35, 41 (D.C.Cir.1982).

At least four states have held that failure to inform a defendant about deportation consequences or erroneous deportation advice is a denial of effective assistance. *People v. Pozo*, 712 P.2d 1044, 1047 (Colo. App.1985); *Edwards v. State*, 393 So.2d 597, 599 (Fla.App.1981); *People v. Correa*, 124 Ill.App.3d 668, 80 Ill.Dec. 395, 400, 465 N.E.2d 507, 512 (1984); *Commonwealth v. Wellington*, 305 Pa.Super. 24, 451 A.2d 223, 225 (1982). The court in *Edwards* noted that counsel has a duty to make sure that the client's guilty plea is entered upon advice that enables the accused to make an informed, intelligent and conscious choice to so plead and that the waiver of constitutional rights must be made with sufficient awareness of the likely results. *Edwards*, 393 So.2d at 599.

On the other hand, *United States v. Campbell*, 778 F.2d 764 (11th Cir.1985), held to the contrary, that counsel had no duty to advise of the deportation consequences. *See also United States v. Gavilan*, 761 F.2d 226 (5th Cir.1985). (The effect of *Gavilan*, however, is diminished by the fact the defendant apparently knew his immigration status might be in jeopardy.)

■ While there is some merit in the argument that deportation is such a serious consequence of the plea that it is more akin to a direct result, we adhere to our rule that failure to advise a defendant concerning collateral consequences, even serious ones, cannot provide a basis for a claim of ineffective assistance of counsel. *See Saadiq*, 387 N.W.2d at 324–26 (subsequent prosecution for possession of firearm by felon, based on prior guilty-plea conviction). In analogous cases, we have refused to set aside guilty pleas on the ground the trial judge failed to fully inform the defendant of the consequences of the plea. *See, e.g., Grout v. State*, 320 N.W.2d 619, 621 (Iowa 1982) (parole ineligibility arising from forcible felony conviction); *Boge v. State*, 309 N.W.2d 428, 430–31 (Iowa 1981) (failure of court to advise defendant of mandatory minimum sentence for persons with prior felony convictions); *State v. Kramer*, 235 N.W.2d 114, 116 (Iowa 1975) (enhanced punishment as habitual offender); *Warner*, 229 N.W.2d at 782 (prosecution for possession of burglary tools collateral consequence of plea on burglary charge).

■ We should note at this point that, if a defendant has been affirmatively *mis*led by an attorney concerning the consequences of a plea, the plea may be held to be invalid, even though the consequences are characterized as collateral. *See Meier v. State*, 337 N.W.2d 204, 207 (Iowa 1983). In *Meier*, we quoted a federal case which said:

One would not suppose that the collateral consequence rule ... would apply in

a situation in which defendant's guilty plea was induced by actual misadvice respecting some collateral consequence when that consequence was of substantial importance to the defendant.

*Id.* at 207 (quoting *Strader v. Garrison,* 611 F.2d 61, 63 (4th Cir.1979)).

In the present case, Mott was not misled; in fact it is undisputed that he was not led at all on the question of deportation. There is no claim, moreover, that his attorney knew about the deportation problem and simply failed to inform Mott of it. Mott does not claim that he relied to his detriment on any advice given concerning possible deportation. This case must therefore be distinguished from *Meier.*

To hold, as Mott urges, that a level of normal competency by an attorney requires anticipation and research of all possible collateral consequences, even "serious" ones, expects too much. As we said in *Saadiq,* "[c]ounsel can hardly conceive all possible collateral consequences of a guilty plea and need not be a crystal gazer." 387 N.W.2d at 326.

We hold that it was not ineffective assistance of counsel in this case to fail to advise Mott of the possibility of deportation. We therefore reverse and remand for dismissal of the postconviction petition. Our disposition on this issue makes it unnecessary to address Mott's claims of prejudice.

REVERSED AND REMANDED.